Kenneth J. WILLIAMS

v.

Donald T. VAUGHN, Mr.; District Attorney for Lehigh County; and, the Attorney General of the State of Pennsylvania.

Civil Action No. 95–7977.

United States District Court, E.D. Pennsylvania.

March 18, 1998.

Defender Association of Philadelphia, Billy H. Nolas, Michael Wiseman, Philadelphia, PA, for Petitioner.

Jacquelyn C. Paradis, Allentown, PA, for Respondent.

## MEMORANDUM

DUBOIS, District Judge.

Before the Court is petitioner's Amended Petition for Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2254 in which he alleges various constitutional violations in both the guilt and sentencing phases of his capital murder trial. Because the Amended Petition contains both exhausted and unexhausted claims—is a "mixed" petition—the Court concludes that it must be dismissed for failure to exhaust state remedies. *See Rose v. Lundy*, 455 U.S. 509, 521–22, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). In order to eliminate any risk that petitioner will be barred from re-filing a habeas petition in federal court after exhausting his state remedies, the Court will dismiss the Amended Petition without prejudice to petitioner's right to file a second amended petition pursuant to Federal Rule of Civil Procedure 15(c)(2) upon exhaustion of state remedies.

## I. BACKGROUND

On October 3, 1985, petitioner Kenneth Williams was found guilty, by a jury in the Court of Common Pleas of Lehigh County, of murder in the first degree, robbery, theft by unlawful taking or disposition, and receiving stolen property. The evidence produced at trial established that petitioner, on or about October 20, 1983, shot Edward Miller, a trucker with whom petitioner had been travelling. *See Commonwealth v. Williams*, 537 Pa. 1, 640 A.2d 1251, 1257 (1994). On October 4, 1985, the jury returned a verdict of

death for that murder, finding that the aggravating factor of murder in the act of a felony (robbery) outweighed any mitigating factors. Judge James N. Diefenderfer of the Court of Common Pleas imposed a sentence of death on June 29, 1990.

The Supreme Court of Pennsylvania affirmed the verdict and sentence on August 9, 1994; there is no evidence that petitioner sought a writ of certiorari from the United States Supreme Court. He did, however, file a petition for state post conviction collateral relief pursuant to the Pennsylvania Post Conviction Relief Act ["PCRA"], 42 P.S. § 9541 et seq., (Purdon's 1982 & Supp.1997), on December 26, 1995. That action was voluntarily discontinued by motion of petitioner on January 31, 1996.

The initial petition for a writ of habeas corpus was filed in this Court on December 27, 1995. On January 9, 1997 petitioner filed a second petition for relief under the PCRA; that action is currently pending. By Order of Judge Carol K. McGinley of the Court of Common Pleas dated October 20, 1997, petitioner's second PCRA filing has been stayed in deference to the federal habeas petition before this Court.

This Court appointed counsel to represent petitioner pursuant to 21 U.S.C. § 848(q)(4)(B) (Supp.1997). By Order dated February 4, 1997, the Court granted petitioner an extension of time in which to file an Amended Petition. The Amended Petition for Writ of Habeas Corpus was filed on February 14, 1997.

## II. DISCUSSION

### A. Application of the Anti–Terrorism and Effective Death Penalty Act ["AEDPA"]

The first issue confronting the Court is the respondents' assertion that the Amended Petition is governed by the Anti–Terrorism and Effective Death Penalty Act ["AEDPA"] of 1996, 110 Stat. 1214, signed into law by President Clinton on April 24, 1996. Respondents argue that although *Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), held that amended 28 U.S.C. § 2254 does not apply to habeas petitions pending before adoption of the AEDPA, *Lindh* does not govern this case because it is procedurally distinguishable. In *Lindh*, respondents argue, the petition had already been decided by the district court and was before the Seventh Circuit at the time the AEDPA was adopted whereas in the case at bar, no decision had been rendered at the time of the AEDPA's adoption. This, however, is a distinction without a difference. The Supreme Court's holding in *Lindh* is quite clear: the "new provisions ... generally apply only to cases *filed* after the Act became effective." *Id.*, 117 S.Ct. at 2068 (emphasis added).

Respondents next argue that the appropriate date for measuring the time of filing is the date the Amended, not the initial, Petition was filed. Since the Amended Petition was filed on February 14, 1997, the AEDPA would clearly apply. The Court concludes, however, that the petitioner's amendment relates back to the initial filing date, December 27, 1995.

The Habeas Corpus Rules are silent with respect to the issue of relation back of an amended petition. However, 28 U.S.C. § 2242 provides that a petition "may be amended or supplemented as provided in the rules of procedure applicable to civil actions." *See also* Habeas Corpus Rule 11 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with these rules, may be applied, when appropriate, to petitions filed under the rules.").

Federal Rule of Civil Procedure 15(c)(2) provides that an amendment relates back when the applicable statute of limitations so provides or when "the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Section 2244(d) of Title 28, the statute of limitations governing habeas actions, is silent as to the question of relation back and thus is not inconsistent with Rule 15(c)(2). Accordingly, the Court will apply that rule to this case. Because both petitions allege constitutional defects surrounding the same "occurrence"—petitioner's trial and penalty phases—under Rule 15(c)(2), the Amended Petition relates back

to the original filing date. *See Williams v. Calderon*, 83 F.3d 281, 285 (9th Cir.1996) (holding that post-AEDPA amendment to pending petition would relate back to filing date). Petitioner filed his initial petition well before the AEDPA was signed into law, and thus his petition will be governed by pre-AEDPA standards.

The Court notes a related issue not raised by the parties, that is, whether *Lindh*'s holding is applicable in a capital case. The *Lindh* Court stated that § 2254(d), the provision at issue before that Court, "governs applications in *noncapital* cases." *Id.* 117 S.Ct. at 2061 (emphasis added). The result in *Lindh* was reached after a comparison of the language of amended 28 U.S.C. § 2254(d) and the language of § 107 of the AEDPA (codified at 28 U.S.C. § 2261 *et seq.*). Section 107 creates special provisions governing habeas corpus petitions in *capital* cases and it applies "to cases *pending* on or after the date of enactment of this Act," 110 Stat. 1226 (emphasis added); section 107 is, therefore, expressly retroactive. Section 2254, on the other hand, contains no such language and, by negative inference, has no retroactive application.

■ In order to take advantage of the provisions of § 107 (which favor the state), a state has to "opt-in" by meeting the criteria of 28 U.S.C. §§ 2261(b)-(c) which provide, in part, that a state must establish "a mechanism" for the appointment and payment of counsel in state post-conviction proceedings. The Third Circuit has held that Pennsylvania is not an "opt-in" state. *See Death Row Prisoners of Pennsylvania v. Ridge*, 106 F.3d 35 (3d Cir.1997). As such, capital habeas petitions in Pennsylvania are governed by the default provisions of § 2254. The Court concludes therefore, that because § 2254 governs this case, the fact that petitioner is facing the death penalty does not affect ap-

plication of *Lindh*'s holding to this case and the Court will not apply the provisions of the AEDPA retroactively. *Accord Green v. Johnson*, 116 F.3d 1115 (5th Cir.1997) (applying *Lindh*'s holding of non-retroactivity to capital habeas petition filed in Texas, a non "opt-in" state).

## B. Exhaustion and Futility

### 1. Exhaustion Requirement

■ A claim which has not been pursued in all available state court proceedings has not been exhausted.[1] Exhaustion "serves the interests of comity between the federal and state systems by allowing the state an initial opportunity to determine and correct any violations of a prisoner's federal rights." *Gibson v. Scheidemantel*, 805 F.2d 135, 138 (3d Cir.1986). It is, therefore, well settled that habeas petitions presenting only unexhausted claims generally may not be granted by federal courts. *See, e.g., Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

Respondents contend that petitioner presents a "mixed" petition—one containing both exhausted and unexhausted claims. The Supreme Court has consistently held that a "mixed" petition must also be dismissed.[2] *See, e.g., Rose v. Lundy*, 455 U.S. 509, 521–22, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989); *see also Lambert v. Blackwell*, C.A. Nos. 97–1281, 97–1283 and 97–1287, slip. op. at 13, 134 F.3d 506, 513–14. This is often referred to as the "total exhaustion" rule.

■ In the case at bar, petitioner has presented none of his claims in a PCRA hearing. This is not fatal to an assertion that his state remedies have been exhausted

---

1. In order to exhaust a claim, it must have been "fairly presented" to the state courts, meaning that the claim heard by the state courts was the "substantial equivalent" of the claim asserted in the habeas petition. *See, e.g., Picard v. Connor*, 404 U.S. 270, 275, 278, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Otherwise, the claim will be deemed to be newly presented in the habeas petition and, therefore, unexhausted.

2. There are exceptions to the general rule. The principal exception applies when it would be futile to return an unexhausted claim to state court because of a state procedural bar; this exception is discussed below.

because the exhaustion requirement will be deemed satisfied so long as the claims presented in the habeas petition were raised on direct appeal. *See Lambert*, at ——, slip. op. at 12 (citing *Evans v. Court of Common Pleas, Delaware County, Pennsylvania*, 959 F.2d 1227, 1230 (3d Cir.1992)).[3]

Petitioner raised the following issues on his direct appeal to the Supreme Court of Pennsylvania:

1) The evidence was insufficient to support a guilty verdict of robbery;

2) Petitioner's motion to suppress his statements was improperly denied because his *Miranda* rights were not knowingly and voluntarily waived;

3) Petitioner's right to compulsory process was denied when trial was not delayed in order to secure the presence of a witness;

4) The trial court improperly admitted two weapons into evidence, neither of which was the murder weapon;

5) The trial court's refusal to remove the victim's family—clad in Mennonite garb—from the courtroom during the trial was improper;

6) The prosecutor engaged in misconduct when he asked the jury to consider "whether the imposition of the death penalty will deter [petitioner] from ever again shooting one of the nicest persons he had ever met in the back";

7) It was an abuse of discretion for the trial court to refuse to grant a new trial in light of after-discovered evidence; and

8) Petitioner was deprived of effective assistance of counsel on various grounds.

While petitioner presents many of these same claims in his petition to this Court, he also presents claims which were not presented on direct appeal or in a state collateral attack under the PCRA. These newly raised issues are therefore unexhausted and, unless an exception applies, the Court must dismiss the Amended Petition without prejudice.

### 2. Futility

Where it would be "futile" to return unexhausted claims in a "mixed" petition to state court because of a state bar, a federal court may retain jurisdiction over the petition, although it generally may not reach the merits of the unexhausted claims.[4] *See Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir.1993). A federal court may conclude that a return by a petitioner to state court would be futile when a state procedural bar " 'clearly foreclose[s] state court review of the unexhausted claims,' " *Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir.1996) (quoting *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir.1993)), but if there is any uncertainty as to "how a state court would resolve a procedural default issue, [a federal court] should dismiss the petition for failure to exhaust ...." *Id.* The Court will, therefore, turn to the question of whether

---

**3.** This conclusion is dictated by the terms of the PCRA: if a claim was raised on direct appeal, it cannot be presented in a collateral attack of a conviction under the PCRA and thus must be deemed exhausted by a federal court. *See* 42 Pa.C.S.A. §§ 9543(a)(3), 9544(a)(2).

**4.** Under *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), a federal court may reach the merits of a habeas claim barred under state law, but only where a petitioner can show either: (1) a "miscarriage of justice" or (2) "cause and prejudice" for the procedural default. To demonstrate cause, a petitioner must prove "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). The ineffective-

ness of counsel at trial or on direct appeal can constitute cause for a procedural default, but only if the error itself "was also constitutionally ineffective ...." *Sistrunk v. Vaughn*, 96 F.3d 666, 675 (3d Cir.1996) (citing *Murray v. Carrier*, 477 U.S. at 492, 106 S.Ct. 2639). Once "cause" has been demonstrated, "actual prejudice" must also be proved, requiring that petitioner show the outcome was "unreliable or fundamentally unfair" as a result of a violation of federal law. *See Lockhart v. Fretwell*, 506 U.S. 364, 366, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993); *see also Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Petitioner does not argue that there is "cause and prejudice" in this case, and, in any event, this exception only applies if a petitioner can first show that returning to state court would be futile.

returning petitioner's unexhausted claims to state court would be futile.[5]

In Pennsylvania, a person may collaterally challenge his or her state conviction under the amended PCRA, and petitioner has done so. However, petitioner faces two procedural bars—waiver and the statute of limitations—which will have to be overcome before he may proceed in state court on his unexhausted claims.

### a. PCRA's Waiver Requirement

■ Before a state court will consider the merits of petitioner's claim, he must overcome the waiver provisions of 42 Pa.C.S.A. § 9544(b), which provide that "an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during review, on appeal or in a prior state postconviction proceeding." If applied, this requirement would almost certainly bar petitioner from proceeding with his unexhausted claims in state court because he had the opportunity to present his claims on direct appeal and did not do so. *See, e.g., Commonwealth v. Eaddy*, 419 Pa.Super. 48, 614 A.2d 1203, 1207–08 (1992), *appeal denied*, 534 Pa. 636, 626 A.2d 1155 (1993) ("nearly all claims are waived under the PCRA since nearly all claims potentially could have been raised on direct appeal"). In the Third Circuit, however, it is well settled that federal courts cannot conclude "that there is no chance that the Pennsylvania courts would find a miscarriage of justice sufficient to override the waiver requirements and permit review under the PCRA. Accordingly, we conclude that a return to state court would not be futile." *Doctor*, 96 F.3d at 683; *see*

*also Lambert*, 134 F.3d at ——, slip op. at 30; *Banks v. Horn*, 126 F.3d 206, 214 (3d Cir. 1997). The PCRA's waiver requirements do not, therefore, present a procedural bar sufficient to allow this Court to retain jurisdiction of the within Amended Petition.

### b. Statute of Limitations

In addition to the waiver rule, a recent amendment to the PCRA requires that all petitions must be filed "within one year of the date the judgment becomes final . . . ." 42 Pa.C.S.A. § 9545(b)(1) (West Supp.1997). A judgment is final, for purposes of the PCRA, "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3).

The Supreme Court of Pennsylvania issued an opinion denying petitioner's claims on direct appeal of his sentence and conviction on August 9, 1994. Petitioner had ninety days from that date (or until November 7, 1994) in which to seek certiorari from the United States Supreme Court. Thus, judgment was final on November 7, 1994. Petitioner's most recent PCRA petition was filed on January 9, 1997, well more than a year after judgment became final.

Under a provision which was enacted at the same time as the PCRA's new statute of limitations and which became effective on January 16, 1996, however, a petitioner has one year from that effective date to file his or her *first* petition, regardless of when judg-

---

5. In his Consolidated Preliminary Memorandum of Law, petitioner suggests that the Court may reach the merits of his claims because the state procedural bars at issue in this case—the PCRA's statute of limitations and its waiver provisions—are not uniformly enforced in capital cases and are thus not "independent and adequate" state grounds. That is a correct statement of law with respect to exhausted claims; it is not, however, correct with respect to unexhausted claims. When confronted with unexhausted claims, a court must determine whether it would be futile to return them to state court.

In contrast, the independent and adequate state grounds doctrine does apply to claims which have been presented in state court, claims which have, in other words, been exhausted. After a

state court has passed judgment on a claim, it is true, as petitioner argues, that a federal court may reach the merits of that claim if the state court's decision was not grounded on an independent and adequate state law. *See Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Doctor*, 96 F.3d at 683. An independent and adequate state law dictating dismissal is one which has been "strictly and regularly followed," *Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), but the state court's decision must "fairly appear" to rest on the state law ground without being intermingled with federal law. *See Coleman v. Thompson*, 501 U.S. 722, 734, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

ment became final. *See* Penn. Gen. Ass. Act of November 17, 1995, P.L. 1118, No. 32 (Spec.Sess. No. 1), § 3(1). The petitioner filed his *second* PCRA petition in state court on January 9, 1997, less than a year from the effective date of the amendments. This petition, however, followed an earlier petition which was filed on December 26, 1995 and was voluntarily withdrawn on January 31, 1996. The question arises, therefore, whether the pending PCRA petition will be treated as a first petition or a subsequent one. If treated as a first petition, there is no statute of limitations bar in state court.

Although there is no case law on this point to date, the Pennsylvania courts have held that under the waiver provisions of 42 Pa. C.S.A. § 9544(b), "[w]here an Appellant has voluntarily withdrawn a previous post-conviction petition, and then files a subsequent post-conviction petition, the second petition will be dismissed unless the withdrawal of the first petition was not intelligent." *Commonwealth v. Shaffer*, 390 Pa.Super. 610, 569 A.2d 360, 363 (1990). Because Pennsylvania courts have, in other circumstances, treated a PCRA petition filed subsequent to one which has been voluntarily withdrawn as a second petition, the Court concludes that under the terms of the PCRA, there is a possibility that petitioner will be barred by the statute of limitations from presenting his new claims in state court. The question then, is whether the statute of limitations makes further state proceedings futile.

■ The Third Circuit recently addressed, in *Lambert*, the question of whether it would be futile for a petitioner to return to state court where she is apparently barred by the PCRA's statute of limitations. *Lambert* held that an otherwise barred petition might nonetheless be heard by a state court under one of the exceptions to the PCRA's statute of limitations.[6] *Lambert*, 134 F.3d at —– —–, slip. op. at 31–34. The circuit court went further, however, noting that whether or not petitioner qualified under one of those exceptions:

no Pennsylvania court has been asked to decide under what circumstances it would excuse an untimely PCRA petition.... Under the prior statute which did not contain a statute of limitations provision, the Pennsylvania courts were lenient in allowing collateral review after long delays, especially in situations involving ineffective assistance of counsel.

*Lambert*, at —– and —– n.33, slip op. 34 and 34 n. 33. The possibility exists, therefore, that like the waiver provisions of 42 Pa. C.S.A. § 9544, the statute of limitations bar might be waived by Pennsylvania courts in some cases. There is thus a lack of certainty with respect to state application of this bar. This lack of certainty demands dismissal. *See Doctor*, 96 F.3d at 681.

The Court notes that a few days before *Lambert* was decided, the Superior Court of Pennsylvania decided *Commonwealth v. Alcorn*, 703 A.2d 1054 (Pa.Super.Ct.1997). In that case, not discussed in *Lambert*, the Superior Court wrote that:

It is clear from the enactment of the 1995 amendments that the General Assembly intended to change the existing law by providing that delay by itself can result in the dismissal of a petitioner's PCRA petition. As a result, though this result may appear harsh to petitioners like appellant whose second PCRA petition will almost certainly be filed more than one year from the date when their judgment of sentence becomes final, that is the result compelled by the statute.

*Id.* at 1057.

*Alcorn* is the only Pennsylvania case which has addressed the statute of limitations question to date and it suggests that the time bar may be rigidly applied. However, because it is the decision of an intermediate court, it is only instructive, not binding on this Court. Accordingly, in light of the clear holding in *Lambert*, the Court will not treat any of

---

**6.** The PCRA provides three exceptions to its statute of limitations: a petition is not time barred where the petition alleges, and petitioner proves either: (1) failure to raise the claim was the result of unconstitutional or unlawful interference by a government official; (2) there are new facts not previously discoverable; or (3) there is a newly announced constitutional right with retroactive application. *See* 42 Pa.C.S.A. § 9545(b)(1).

petitioner's claims as clearly foreclosed in state court.

## C. Holding Petition in Abeyance

 Petitioner seeks to have this Court hold his petition in abeyance pending resolution of his PCRA proceedings. Mindful that when a district court is confronted with a "mixed" petition, it "must dismiss," *Rose v. Lundy,* 455 U.S. at 522, 102 S.Ct. 1198, a court may nonetheless retain jurisdiction of a habeas petition if it finds that there are "exceptional circumstances" which warrant that retention. *Christy v. Horn,* 115 F.3d 201, 207 (3d Cir.1997). The Third Circuit suggested in dicta that where a petitioner's execution would be "imminent" were a federal stay of execution to be lifted, such imminence might be one of the "rare cases [in which] exceptional circumstances of peculiar urgency exist ...." *Christy* at 206–07.[7] The basis for this rule is that the "total exhaustion" requirement is not an inflexible bar since it is enforced as a matter of comity and not as a matter of jurisdiction. *See Christy,* 115 F.3d at 207 (citing *Strickland v. Washington,* 466 U.S. 668, 684, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

Petitioner suggests that the standard for retention is not so high. In his Memorandum in Reply to the Commonwealth's Answer, petitioner appended a series of orders in which federal habeas claims were held in abeyance pending exhaustion of state remedies. *See Carpenter v. Vaughn,* C.A. No. 95–9001 (3d Cir.1995) (holding petition in abeyance without discussing reasons); *Duffey v. Lehman,* 1996 WL 13154 (3d. Cir.1996), *vacated as moot en banc,* 84 F.3d 668 (3d

Cir.1996) (holding petition in abeyance when death was imminent but vacating after that issue became moot); *Griffin v. Horn,* C.A. No. 95–2737 (E.D.Pa. Feb.23, 1996) (holding petition in abeyance where Pennsylvania did not object and death warrant had been issued).[8] Each of these cases predates *Christy* and *Lambert* and involved situations in which death warrants had been issued. They therefore offer this Court no guidance.

Petitioner also relies on authority from other circuits. Many of those cases also involved the issuance of a stay of execution, a situation with which this Court is not faced. *See, e.g., Prejean v. Blackburn,* 743 F.2d 1091 (5th Cir.1984); *Shaw v. Martin,* 613 F.2d 487 (4th Cir.1980); *Scott v. Dugger,* 891 F.2d 800 (11th Cir.1989). Others are inapposite. *See, e.g., Arango v. Wainwright,* 716 F.2d 1353 (11th Cir.1983) (ordering district court to hold petition in abeyance while petitioner pursued other claims in state court while noting that had those claims been presented in the habeas petition it would have had to dismiss under *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379, and reaching decision for the sake of judicial economy). To the extent that stays were issued in those cases because of the risk of execution, *see, e.g., United States v. Peters,* 837 F.Supp. 940 (C.D.Ill.1993) (issuing stay because of concern that if dismissed, execution might be set and carried out before petitioner exhausted), it is clear that is not an option in the Third Circuit after *Christy,* unless the risk of death is "imminent."

Petitioner additionally cites a case which noted by way of dicta that "where there are

---

7. In *Christy,* a warrant for the execution of the habeas petitioner had been signed. The prisoner shortly thereafter sought leave to proceed in forma pauperis and for appointment of counsel to aid him in filing a habeas petition. The district court granted his motion, appointed counsel and stayed the execution which was less than a month away. After the petition was filed, the Commonwealth responded, arguing that at least one claim was unexhausted. The district court maintained the stay of execution and held the petition in abeyance pending resolution of the unexhausted claim in state court. The Third Circuit vacated and remanded, however, finding that there were no "exceptional circumstances" because execution was not imminent.

8. In addition to these habeas cases, petitioner also cites a number of Third Circuit opinions in which petitions were held in abeyance in non-habeas contexts. *See, e.g., Linnen v. Armainis,* 991 F.2d 1102 (3d Cir.1993) (staying prisoner's § 1983 claim pending resolution of state postconviction proceedings); *American Ambulance Service of Pennsylvania, Inc. v. Sullivan,* 911 F.2d 901 (3d Cir.1990) (holding appeal in abeyance pending resolution in Bankruptcy Court). These cases are, however, inapposite given the clear instruction of the Supreme Court in *Rose v. Lundy* that habeas petitions "must" be dismissed when a petition contains claims that have not been exhausted in state court.

both exhausted and unexhausted claims tendered in a petition, the court may grant a stay ... rather than dismissing the pending habeas case." *Gordon v. Vasquez,* 859 F.Supp. 413, 417 (E.D.Ca.1994) (citing *Neuschafer v. Whitley,* 860 F.2d 1470, 1472 n. 1 (9th Cir.1988)). The Ninth Circuit has, however, expressly disavowed this dicta. In *Greenawalt v. Stewart,* 105 F.3d 1268 (9th Cir.1997), *cert. denied,* —— U.S. ——, 117 S.Ct. 794, 136 L.Ed.2d 735 (1997), the Ninth Circuit wrote that "[i]n light of *Rose,* and our consistent adherence to its directive that the district courts must dismiss petitions containing unexhausted claims, we cannot rely on [the] dicta" in *Neuschafer v. Whitley,* 860 F.2d 1470, 1472 n. 1 (9th Cir.1988) that a district court may "hold a mixed habeas petition in abeyance." *Greenawalt,* 105 F.3d at 1274; *see also Victor v. Hopkins,* 90 F.3d 276, 277 (8th Cir.1996) (holding that federal court should not hold habeas petition in abeyance where state claims are unexhausted even if it is unclear whether those claims are procedurally barred in state court). Citing this line of cases does not, therefore, avail petitioner.

In light of *Christy,* the Court concludes that in order to stay federal proceedings and hold a habeas petition in a suspense docket pending resolution of state court proceedings, there must be "exceptional circumstances." The Court next addresses that question.

### 1. Would Application of the AEDPA Upon Petitioner's Re–Filing Be an "Exceptional Circumstance"?

■ Petitioner contends that he would be unfairly prejudiced if the Court dismisses his petition without retaining jurisdiction. He argues that this "harsh and unfair" result would come about because, upon re-filing after presenting (and exhausting) his remaining claims in state court, he would be gov-

erned by the new, stricter standards of the AEDPA.[9] The Court finds, however, that this is an insufficient reason to hold the petition in abeyance.

As the Ninth Circuit stated in *Greenawalt:*

[W]e require state prisoners to exhaust their claims in state court before coming to federal court with a habeas corpus petition. We adhere to that requirement even though Congress and the Supreme Court periodically modify the rules governing the availability of habeas corpus relief in federal court. We acknowledge that the Act may have worsened Greenawalt's legal position while he was exhausting his state remedies; undoubtedly, there are many state prisoners in the same situation. But Congress intended to restrict the availability of habeas corpus relief when it passed the Act, and the Supreme Court has held that the Act is constitutional. *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 2340, 135 L.Ed.2d 827 (1996) .... The district court correctly refused to help Greenawalt evade its requirements by accepting a federal petition which was plainly and concededly premature.

*Id.* at 1275. *See also Morris v. Bell,* 1997 WL 560055 (6th Cir.1997) (holding that no unusual or extraordinary circumstances were presented by passage of the AEDPA which warranted holding petition in abeyance rather than dismissing).

There is, however, another potential problem—not raised by any party—which is suggested by the facts of this case: the possibility that if the Court were to dismiss, petitioner could find himself barred from re-filing his habeas petition in federal court after exhausting state remedies because of the AEDPA's one year statute of limitations. Thus, the Court turns to an analysis of the application of the statute of limita-

9. Among some of the changes to habeas law which petitioner claims will prejudice him are: the petitioner must meet a heightened standard of an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or must show that state proceedings "resulted in a decision that was based on an unreasonable determination of the facts" in order to obtain relief, 28 U.S.C. § 2254(d)(1)-(2); the petitioner must overcome by "clear and con-vincing" evidence the presumption that state findings of fact are correct, 28 U.S.C. § 2254(e)(1), and; petitioner must overcome enhanced procedural bars before presenting a claim the factual basis of which was not developed at trial, 28 U.S.C. § 2254(e)(2). As discussed in detail below, the AEDPA has also added a statute of limitations to habeas proceedings. *See* 28 U.S.C. § 2244(d).

tions to petitioner's case to determine whether such a bar presents an "exceptional circumstance."

## 2. Application of AEDPA's Statute of Limitations to Petitioner's Claims

The AEDPA provides that "[a] 1–year period of limitation shall apply to an application for a writ of habeas corpus ... [which] shall run from the latest of—(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review...." 28 U.S.C. § 2244(d)(1). The Third Circuit recently concluded that the AEDPA's statute of limitations does not have a retroactive application, *United States v. Urrutia,* C.A. No. 97–7051, Memo. Op. at 6 (3d Cir. Sep. 15, 1997),[10] and the court held that a petitioner will have "a reasonable time" after the date of the AEDPA's enactment to file a habeas petition, even if the statute of limitations would otherwise have run. *Id.; accord, Calderon v. United States District Court for the Central District of California,* 128 F.3d 1283, 1287 (9th Cir.1997), *cert. denied* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998); *United States v.. Simmonds,* 111 F.3d 737, 745 (10th Cir.1997); *Lindh v. Murphy,* 96 F.3d 856, 866 (7th Cir.1996), *rev'd on other grounds,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Reyes v. Keane,* 90 F.3d 676, 679 (2d Cir.1996); *Green v. Wharton,* 1997 WL 404278 at *2 (N.D.Ga. 1997). Although the Third Circuit did not conclude precisely how much time a petitioner would have to file his claim, he will be given at least seven and half months—the time taken by the petitioner in Urrutia—and not more than one year after the date of enactment. *See Urrutia, supra.*

The AEDPA also provides for the tolling of its statute of limitations, and it is this provision which presents the possibility of a bar: "The time during which a *properly filed* application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period limitation ...." *Id.* § 2244(d)(2) (emphasis added). Upon reading this statute, the question arises: what is the meaning of "properly filed?" The Third Circuit has held that a "properly filed" PCRA petition is one which is "permissible under state law" meaning that it is "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir. 1998).

There is a possibility that should this Court dismiss the Amended Petition, the state court could decide that the PCRA filing was either time barred or waived and dismiss on one of those grounds. *See Alcorn,* 703 A.2d at 1057. If the state court so decided, petitioner will not have filed his PCRA petition according to the "state's procedural requirements." *Lovasz,* at 148. The filing will not, therefore, have been "proper" within the terms of the AEDPA as defined by *Lovasz,* and the time petitioner spent in state court would not, it follows, toll the AEDPA's statute of limitations. If it takes more than a year for the state court to reach its decision, petitioner's time to file his habeas petition under the AEDPA could expire and he might arguably be barred from federal review of his claims.[11]

While the Court cannot pre-judge the likelihood of this scenario, the Court believes there is a risk that petitioner could be barred from federal court were the Court simply to dismiss his petition, even if dismissal is without prejudice. It is true that upon re-filing a

---

10. Petitioner's 28 U.S.C. § 2255 motion in *Urrutia* was dismissed by the district court because it was filed more than one year after his judgment became final within the meaning of the AEDPA. The Third Circuit vacated and remanded. The court declined to reach the question of exactly how much time after passage of the AEDPA an otherwise barred petitioner would have to file, holding instead that petitioners would be given a "reasonable time." *Urrutia,* Memo. Op. at 5. The *Urrutia* opinion is "not for publication" but the Court may nonetheless look to it for guidance.

11. The Court notes that at least one court has stated in dicta that the AEDPA's statute of limitations is subject to equitable tolling. *See Calderon v. United States District Court for the Central District of California,* 128 F.3d 1283, 1286 (9th Cir.1997), *cert. denied* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998). It is possible, therefore, that petitioner would not be barred even under the scenario outlined above.

habeas petition which had been dismissed without prejudice after exhausting state remedies, the re-filed petition will not be treated as a successive or subsequent petition for purposes of the AEDPA. *See Christy,* 115 F.3d at 208. The AEDPA's time limit applies to first petitions as well, however, so the issue is not whether the re-filed petition will face the procedural hurdles of a successive petition, but whether it will relate back to the date the initial petition was filed for statute of limitations purposes.

■ Simply dismissing without prejudice—with nothing more—might not allow petitioner to argue that his re-filed petition relates back to the date of filing his initial federal petition. *See, e.g., Cardio–Medical Associates, Ltd. v. Crozer–Chester Medical Center,* 721 F.2d 68, 77 (3d Cir.1983) ("It is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice. As regards the statute of limitations, the original complaint is treated as if it never existed." (citing *Butler v. Sinn,* 423 F.2d 1116 (3d Cir.1970) (per curiam)); *Di Sabatino v. Mertz,* 82 F.Supp. 248 (M.D.Pa. 1949)); *Sabo v. Parisi,* 583 F.Supp. 1468, 1470 (E.D.Pa.1984) (holding that where plaintiff files second complaint two years after first was dismissed without prejudice, "fact that defendants may have been on notice as to plaintiff's cause of action does not toll the running of the statute; only the refiling of the complaint within the statutory period could have done that"). Accordingly, in order to avoid potential problems with respect to the tolling of the AEDPA's statute of limitations during the pendency of the PCRA proceedings, the Court concludes that it should dismiss the Amended Petition without prejudice to petitioner's right to file a second amended petition after exhaustion of state remedies. The filing of such a second amended petition would, pursuant to Federal Rule of Civil Procedure 15(c)(2), relate back to the original filing date of the habeas corpus petition because "the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed.R.Civ.P. 15(c)(2). The one year statutory bar can therefore be avoided.

The Third Circuit has said that application of a provision of the AEDPA "so as to eviscerate completely the right of prisoners . . . to petition for habeas corpus relief would be 'entirely unfair . . . .' " *Urrutia,* Memo. Op. at 4–5 (quoting *Reyes v. Keane,* 90 F.3d 676, 679 (2d Cir.1996)). In view of the Court's conclusion that the AEDPA's statutory bar can be avoided by dismissing the Amended Petition without prejudice to petitioner's right to re-file, however, the Court need not reach the question of whether the possibility of being barred from re-filing a habeas petition in federal court would amount to an "exceptional circumstance" within the meaning of *Christy.*[12]

The alternative to a dismissal without prejudice to file a second amended petition would be an order staying the federal habeas corpus proceeding until exhaustion of state remedies is completed. There is a difference between, on the one hand, nominally retaining jurisdiction in order to avoid prejudicing a petitioner while still allowing Pennsylvania's courts the first opportunity to correct any alleged violation of a federal rights and, on the other hand, retaining jurisdiction in order to reach the merits of a claim despite the fact that the claim has not been presented to the Pennsylvania courts. Petitioner's request that his habeas petition be held in abeyance implicates only the first situation and the comity concerns are thus less significant. The problem with such an approach, however, is that many, perhaps most, "mixed" habeas petitions could end up in this status, thereby violating the mandate of *Rose v. Lundy* and recent Third Circuit cases which require dismissal of petitions containing unexhausted claims. In addition, the practice of retaining jurisdiction of these "mixed" petitions would require transferring all such cases to a civil suspense file. Such a practice would present administrative prob-

---

12. The Court notes that the potential for an "unfair" result after dismissal without prejudice of a mixed habeas petition was presented by the facts of the *Lambert* case but was not addressed by the

*Lambert* court, perhaps because the *Lambert* opinion antedated the Third Circuit's opinion in *Lovasz* which defined the term "properly filed" under the AEDPA.

lems including the need to monitor state court proceedings and is unnecessary under the circumstances.

### III. CONCLUSION

Petitioner presents this Court with an Amended Petition for Writ of Habeas Corpus which contains both unexhausted and exhausted claims and is therefore a "mixed" petition. The Court concludes that it will not be futile to return the unexhausted claims in the Amended Petition to state court, and it will, therefore, dismiss the Amended Petition for failure to exhaust state remedies. To avoid the possibility of a bar to re-filing, the Court will dismiss the Amended Petition without prejudice to petitioner's right to file a second amended petition pursuant to Federal Rule of Civil Procedure 15(c)(2) upon exhaustion of state remedies.

An appropriate order follows.

### *ORDER AND MEMORANDUM*

### *ORDER*

**AND NOW**, to wit, on this 8th day of May, 1998, upon consideration of the Respondents' Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e) (Document No. 25, filed April 2, 1998), and Petitioner's Brief in Opposition to the Respondents' Motion to Alter or Amend Judgment (Document No. 28, filed April 20, 1998), for the reasons set forth in the accompanying Memorandum, **IT IS ORDERED** that Respondents' Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e), treated as a Motion for Relief From Judgment or Order pursuant to Federal Rule of Civil Procedure 60(b), is **DENIED**.

### *MEMORANDUM*

 **A. Introduction:** Rule 59(e) provides that "[a]ny motion to alter or amend judgment shall be filed no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e). This "ten-day period 'is jurisdictional, and cannot be extended in the discretion of the district court.'" *Adams v. Trustees of*

the New Jersey Brewery Employees' Pension Trust Fund, 29 F.3d 863, 870 (3d Cir.1994) (quoting *Welch v. Folsom*, 925 F.2d 666, 669 (3d Cir.1991)).

The judgment which respondents seek to have altered or amended was entered on March 18, 1998. Not counting intervening weekend days or legal holidays, *see* Fed. R.Civ.P. 6(a), respondents had until April 1, 1998 to file their Motion under Rule 59(e). The respondents' Motion was filed on April 2, 1998. Respondents are therefore time barred.

 Although the Court has concluded that respondents' Rule 59(e) Motion is time barred, it will nonetheless treat the Motion as one brought pursuant to Federal Rule of Civil Procedure 60(b) and address the merits of respondents' claims.[1] *See, e.g., Carpenter v. Williams*, 86 F.3d 1015, 1016 (10th Cir. 1996); *Cf. United States v. Clark*, 984 F.2d 31, 32 (2d Cir.1993) ("[A] motion to reconsider a section 2255 ruling is available ... [and] is to be treated as a Rule 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter....").

**B. Respondents' Arguments:** The respondents request relief from the Court's Order entered March 18, 1998, on a number of grounds:

(1) Respondents argue that the Court improperly utilized Rule 15(c)(2) because that rule applies only to pending cases and, once dismissed, this case is not pending.

(2) Respondents also argue that the Court, by dismissing the petition without prejudice to petitioner's right to file a second amended petition pursuant to Federal Rule of Civil Procedure 15(c)(2) upon exhaustion of state remedies, has effectively held the petition in abeyance and thereby violated the dictate of *Christy v. Horn*, 115 F.3d 201 (3d Cir.1997).

(3) Additionally, respondents contend that the Court's Order dated March 17, 1998 is "fundamentally inconsistent" with the Anti–Terrorism and Effective Death Penalty Act

---

1. A detailed analysis of the facts and issues presented in this case is set forth in the Court's

Memorandum dated March 16, 1998.

["AEDPA"] of 1996, 110 Stat. 1214, effective April 24, 1996, which (among other things) amended the habeas corpus statute by creating a new statute of limitations and by providing for stricter limits on successive petitions. The Court's ruling is "inconsistent" with the AEDPA, respondents say, because, by allowing inmates to file an initial petition in federal court and then return to state court to pursue frivolous claims without penalty, the decision permits those inmates multiple bites at the habeas apple and unlimited time to appear in federal court.

(4) Finally, under *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), respondents note, inmates may drop unexhausted claims and proceed in federal court. By employing that procedure, they argue, an inmate avoids any possibility of prejudice.

**C. Discussion:** The Court's decision to utilize Rule 15(c)(2), as described in its Memorandum dated March 16, 1998, was premised, in large part, on the language of the AEDPA's statute of limitations. The AEDPA states that the "time during which a properly filed application for State post-conviction or other collateral review ... is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). The Third Circuit has ruled that a "properly filed" PCRA petition is one which is "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3d Cir. 1998). This interpretation of "properly filed" leaves open the possibility that a Pennsylvania Post Conviction Relief Act ["PCRA"], 42 P.S. § 9541 *et seq.*, (Purdon's 1982 & Supp. 1997) proceeding which is dismissed on procedural grounds will not be deemed to have been "properly filed" for purposes of the

AEDPA and will not, therefore, toll the statute of limitations. It was this possibility—that the limitations period would expire before petitioner could exhaust and file a new petition—which prompted the Court to dismiss the within habeas petition without prejudice to petitioner's right to file a second amended petition pursuant to Federal Rule of Civil Procedure 15(c)(2) upon exhaustion of state remedies.[2]

■ Although respondents contend that there is no authority for this Court to employ Rule 15(c)(2) as it has, they also do not cite authority for the proposition that the Court cannot so use the Rule. In the normal course of events, a party could not avoid a statute of limitations defense upon re-filing a claim which became barred after the claim had been dismissed without prejudice. If a court dismisses a complaint, without more, "[i]t is a well recognized principle that a statute of limitations is not tolled by the filing of a complaint subsequently dismissed without prejudice. As regards the statute of limitations, the original complaint is treated as if it never existed," *Cardio–Medical Associates, Ltd. v. Crozer–Chester Medical Center*, 721 F.2d 68, 77 (3d Cir.1983). As a result, in those cases where there is a potential statute of limitations bar after dismissal of a complaint and before an amended complaint can be filed, it has long been the practice of this Court to dismiss without prejudice to the right of a party to file an amended complaint if it concludes that equity so demands.

The Court recognizes that, in the context of a habeas petition, employing the relation back provision of Rule 15(c)(2) is somewhat novel.[3] Nonetheless, there is nothing new about dismissing a case with leave to amend.

2. The Court notes that petitioner has argued in his response to respondent's Motion that the Court's concern—that he may be time barred under the AEDPA if his state court collateral proceedings are found to be improperly filed—is unfounded because the pending state court collateral proceedings were properly filed. Nonetheless, as the Court explained at length in its Memorandum dated March 16, 1998, there is a possibility that petitioner will be time barred upon re-filing in federal court if there is a finding that his state court collateral proceeding was not properly filed. Accordingly, in order to protect

the right of the petitioner to return to federal court, the Court decided to dismiss the Petition without prejudice to petitioner's right to file an Amended Petition under Federal Rule of Civil Procedure 15(c)(2).

3. The Court has adopted this novel course because of the Third Circuit's stricture against holding habeas petitions in abeyance absent "exceptional circumstances." *Christy*, 115 F.3d at 207. If, upon review of this matter on appeal, the Third Circuit believes that Rule 15(c)(2) is inapplicable to the situation presented, this Court

As a general matter, of course, "[t]he district court has discretion whether or not to grant leave to amend, and its decision is not subject to review on appeal except for abuse of discretion ..." 3 Moore's Federal Practice P 15.08[4], at 15–64 (2d ed.1987) (footnotes omitted). In exercising its discretion, however, the court must observe the direction in Rule 15(a) that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a); *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); 3 Moore's Federal Practice P 15.08[4], at 15–65. Given our jurisprudential preference for adjudication of cases on their merits rather than on the basis of formalities, it will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8.

*Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir., 1988). Indeed, at least one case has recognized that dismissing with leave to amend suspends operation of the statute of limitations. See *Gordon v. Green*, 602 F.2d 743, 747 (5th Cir.1979) ("We hold that under F.R.Civ.P. 15(c), the filing of a proper, decent, acceptable amendment will relate back to the original filing, thus eliminating any question concerning the statute of limitations." (citation omitted) (cited with approval by *Cardio–Medical Associates*, 721 F.2d at 77)).

The Third Circuit has recently reiterated that while "even though [plaintiff] no longer was entitled to amend her complaint as of right after the dismissal of her claim, it was within the district court's discretion to grant her leave to amend." *Smith v. National Collegiate Athletic Ass'n*, 139 F.3d 180, 1998 WL 111526, *8 (3rd Cir. March 16, 1998) (citing *Newark Branch, NAACP v. Town of Harrison*, 907 F.2d 1408, 1417 (3d Cir.1990); *Kauffman v. Moss*, 420 F.2d 1270, 1276 (3d Cir.1970); *In re Sverica Acquisition Corp.*, 179 B.R. 457, 459 (Bkrtcy.E.D.Pa.1995); *Fearon v. Community Fed. Sav. & Loan of Phila.*, 119 F.R.D. 13, 15 (E.D.Pa.1988)); *see*

also *Nelson v. County of Allegheny*, 60 F.3d 1010, 1015 (3d Cir.1995), *cert. denied*, 516 U.S. 1173, 116 S.Ct. 1266, 134 L.Ed.2d 213 (1996) (recognizing that the relation back provision of Rule 15(c) "ameliorates" the effect of a statute of limitations but denying motion to amend pleadings). Thus, a court may grant a motion under Rule 15 to amend a complaint even though the complaint is no longer pending. Clearly, therefore, Rule 15 does not apply only to pending matters.

It is also worth examining a recent Third Circuit case of first impression, *Urrutia v, Harrisburg County Police Dep't*, 91 F.3d 451 (3d Cir.1996). In that case, Urrutia, the *pro se* plaintiff in a § 1983 claim, filed an *in forma pauperis* complaint prior to the two year statute of limitations governing § 1983 claims in Pennsylvania. Under the provisions of 28 U.S.C. § 1915 then governing, the court could "dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d) (West Supp.1995). In *Urrutia*, the statute of limitations expired while a magistrate judge was addressing these " § 1915(d) concerns." Upon receipt of the report and recommendation, the district judge dismissed the complaint and denied Urrutia's motion for an extension of time to amend.

During the time his § 1915 motion was pending, Urrutia could not serve the parties named in his complaint because only the court could authorize "the commencement ... of any suit ... without prepayment of fees and costs." 28 U.S.C. § 1915(a) (West Supp.1995). Thus, an *in forma pauperis* suit was not commenced upon filing of the complaint, but rather only after the district court satisfied itself that the plaintiff was indigent and that the claim was not frivolous. If a plaintiff needs to add a party to the complaint, he has only 120 days to do so under Rule 15(c)(3) (incorporating Rule 4(m)). Because the time spent waiting for a § 1915(d) determination is not within the control of the plaintiff, and because both the statute of limitations and the 120 day period can expire while a plaintiff is waiting, the Third Circuit held that "once a plaintiff submits an *in*

invites the appeals panel to reconsider the holding in *Christy* in light of the way in which the

AEDPA's statute of limitations may apply in cases such as this one.

*forma pauperis* complaint within the limitations period, and where an amendment will be necessary to cure a defect, the 120 day period of Rule 15(c)(3) is suspended until the district judge authorizes the issuance of the summons and service of the amended complaint." *Urrutia,* 91 F.3d at 459. The effect of this holding is to toll the statute of limitations during the pendency of an *in forma pauperis* motion. *See id.* at 459–60.

The Third Circuit in *Urrutia* was plainly motivated by a concern that a valid claim not be barred because of the technical application of a statute of limitations. It therefore extended the reach of Rule 15 to allow a plaintiff to amend his pleadings even after the running of the statute of limitations where plaintiff was not responsible for the delay but the delay was instead the result of proceedings outside of his control. While that case is not on all fours with the instant matter, it does instruct district courts that plaintiffs—and by extension, petitioners—should not be punished where they are proceeding in good faith and, due to no fault of their own, become tangled in the complexities of statutory limitations provisions. Under the facts of this case, the "properly filed" provision of the AEDPA's statute of limitations remains open to interpretation. Therefore, the Court has employed Rule 15(c)(2) so as to toll the running of the statute of limitations should that be necessary upon petitioner's return to federal court.

Furthermore, a court may dismiss a case in such a way as to ensure, when equity demands, that a non-jurisdictional statute of limitations will not bar the filing of an amended complaint or petition. With respect to habeas petitions, the Ninth Circuit has held that the AEDPA's statute of limitations is not jurisdictional and is therefore subject to equitable tolling. *See Calderon v. United States District Court for the Central District of California,* 128 F.3d 1283, 1286 (9th Cir. 1997), *cert. denied* —— U.S. ——, 118 S.Ct. 899, 139 L.Ed.2d 884 (1998). In the instant case, the Court concluded that employing Rule 15(c)(2) was the best way to protect against the risk that petitioner would be barred from federal court, and that utilizing that Rule as it has best complied with the

terms of both the AEDPA and Third Circuit precedent expressing comity concerns. The Court now turns to those latter concerns.

Contrary to respondents' contention, the Court's order was not the equivalent of holding a claim (or in this case, the petition) in abeyance. When a claim is held in abeyance by a court, it continues to be subject to the jurisdiction of that court. The Third Circuit has held that a court may only retain jurisdiction of a habeas petition if it finds that there are "exceptional circumstances" which warrant that retention. *See Christy,* 115 F.3d at 207. The decision in *Christy* was motivated by a concern of comity. *See id.* By dismissing the petition without prejudice, the Court has relinquished jurisdiction altogether. By providing that petitioner may file an amended petition pursuant to Federal Rule of Civil Procedure 15(c)(2) after exhaustion of state remedies, the Court has also ensured that petitioner will not be prejudiced by the possibility of a state court dismissal on procedural grounds. That insurance is effected without infringing on the jurisdiction of the state court and thus comports with *Christy's* holding.

Moreover, this procedure will not, as respondents argue, allow "any number of improper state collateral proceedings to indefinitely delay litigation of the single federal action the amended habeas petition contemplates." Respondent's Memorandum of Law at 1. If, once a court does dismiss pursuant to Rule 15(c)(2), a petitioner abuses his right to proceed in state court and presents a succession of frivolous claims, the court is permitted, when the inmate returns to federal court to, on its own motion, address the merits of all the claims in order to dismiss them. *See* 28 U.S.C. § 2254(b)(2). Moreover, a court may, on its own motion, dismiss any claims it deems to be frivolous which have been filed by an inmate proceeding (as the vast majority do) *in forma pauperis. See* 28 U.S.C. § 1915(e)(2)(B)(i).

Finally, while it is true that *Rose* contemplates the possibility that a petitioner may simply drop his unexhausted claims, it equally contemplates the possibility that petitioner will choose to return to state court to exhaust his unexhausted claims. Moreover, the

AEDPA provides that "properly filed" state collateral proceedings will toll the operation of the habeas statute's new statute of limitations. *See* 28 U.S.C. § 2244(d)(2). Thus, Congress, in enacting the AEDPA, also contemplated the possibility that state inmates would choose to exhaust their state remedies before returning to federal court.[4] Because of the uncertainty as to the meaning of the phrase "properly filed," there is a chance that a petitioner could be barred from ever presenting his or her claims in federal court after attempting to exhaust unexhausted claims in state Court. *Cf. Lovasz, supra.* With this concern in mind, the Court simply is not prepared to make a petitioner gamble that his state claim will not later be considered properly filed by a federal court.

**D. Conclusion:** For the foregoing reasons, the Court has denied respondents' Motion to Alter or Amend Judgment pursuant to Rule 59(e), treated as a Motion for Relief From Judgment or Order pursuant to Rule 60(b).

4. Indeed, because of the more stringent procedural hurdles an inmate must surmount before successfully filing a second or successive petition under the AEDPA, and because of the newly enacted statute of limitations, it is more likely now than before enactment of the AEDPA that, rather than dropping their unexhausted habeas claims, inmates will first seek to exhaust all of their remedies.